CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

OCT 15 2015

JULIA C. DUDLEY, CLERK
BY:
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| RITA G. WHITE,<br><br>　　　Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>　　　Defendant. | Civil Action No. 7:15CV00074<br><br>**<u>MEMORANDUM OPINION</u>**<br><br>By:　Hon. Glen E. Conrad<br>　　　Chief United States District Judge |

Plaintiff has filed this action challenging the final decision of the Commissioner of Social Security denying plaintiff's claim for supplemental security income benefits under the Social Security Act, as amended, 42 U.S.C. § 1381 et seq. Jurisdiction of this court is pursuant to 42 U.S.C. § 1383(c)(3), which incorporates § 205(g) of the Social Security Act, 42 U.S.C. § 405(g). As reflected by the memoranda and argument submitted by the parties, the issues now before the court are whether the Commissioner's final decision is supported by substantial evidence, or whether there is "good cause" to necessitate remanding the case to the Commissioner for further consideration. See 42 U.S.C. § 405(g).

The plaintiff, Rita G. White, was born on September 12, 1969. Ms. White earned a GED. Plaintiff has prior work experience as a housekeeper. On September 12, 2011, Ms. White filed an application for supplemental security income benefits. She alleged that she became disabled for all forms of substantial gainful employment on January 1, 2001, due to bipolar disorder; post-traumatic stress disorder; acid reflux; hypertension; back injury; congestive heart failure; chronic diastolic heart failure; irritable bowel syndrome; sinus problems; and depression/anxiety. She

later amended her application so as to reflect an alleged disability onset date of August 22, 2011. Ms. White now maintains that she has remained disabled to the present time.

Plaintiff's claim was denied upon initial consideration and reconsideration. She then requested and received a de novo hearing and review before an Administrative Law Judge. In an opinion dated September 24, 2013, the Law Judge also determined that Ms. White is not disabled. The Law Judge found that plaintiff suffers from several severe impairments, including back pain, status post injury; right hip pain; heart disease with history of congestive heart failure; sinus problems; irritable bowel syndrome; acid reflux; depression; anxiety; bi-polar disorder; and post-traumatic stress disorder. (TR 17). Because of these impairments, the Law Judge ruled that Ms. White is disabled for all of her past relevant work. (TR 26). However, the Law Judge determined that plaintiff retains sufficient functional capacity for a limited range of sedentary work. The Law Judge characterized Ms. White's residual functional capacity as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a range of sedentary work as defined in 20 CFR 416.967(a). The claimant would be capable of standing/ walking for 4 hours in a normal 8 hour work day; sitting for 6 hours in a normal 8 hour work day; lifting/ carrying 10 pounds frequently and 20 pounds occasionally; occasionally pushing/pulling with the lower extremities; occasionally climbing ramps and stairs, balancing, kneeling, crouching, and stooping but precluded from climbing ladders, ropes, or scaffolds and crawling; and should avoid concentrated exposure to vibrations, wetness, hazards, and extreme cold temperatures. The claimant would also require work involving one to two step job instructions.

(TR19). Given such a residual functional capacity, and after considering plaintiff's age and education, as well as testimony from a vocational expert, the Law Judge held that plaintiff retains sufficient functional capacity for several specific sedentary work roles existing in significant number in the national economy. (TR 27). Accordingly, the Law Judge ultimately concluded

2

that Ms. White is not disabled, and that she is not entitled to supplemental security income benefits. See 20 C.F.R. § 416.920(g). The Law Judge's opinion was adopted as the final decision of the Commissioner by the Social Security Administration's Appeals Council. Having exhausted all available administrative remedies, Ms. White has now appealed to this court.

While plaintiff may be disabled for certain forms of employment, the crucial factual determination is whether plaintiff was disabled for all forms of substantial gainful employment. See 42 U.S.C. § 1382c(a). There are four elements of proof which must be considered in making such an analysis. These elements are summarized as follows: (1) objective medical facts and clinical findings; (2) the opinions and conclusions of treating physicians; (3) subjective evidence of physical manifestations of impairments, as described through a claimant's testimony; and (4) the claimant's education, vocational history, residual skills, and age. Vitek v. Finch, 438 F.2d 1157, 1159-60 (4th Cir. 1971); Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

While the issues in this case are somewhat close, the court is unable to conclude that the Commissioner's final decision is supported by substantial evidence. The Administrative Law Judge found that in addition to her heart and musculoskeletal problems, Ms. White suffers from several severe psychiatric impairments, including depression, anxiety, bi-polar disorder, and post-traumatic stress disorder.[1] Yet, in assessing plaintiff's residual functional capacity, the Law Judge identified only one work-related restriction which could be fairly associated with mental or emotional dysfunction: a limitation to work involving one to two step job instructions. (TR 19). In his review of the evidence related to plaintiff's psychiatric condition, the Law Judge found that

---

[1] Under the governing administrative regulations, a severe impairment is characterized as one which significantly limits physical or mental ability to do basic work activities. See 20 C.F.R. § 416.921.

3

Ms. White also experiences moderate difficulties with regard to concentration, persistence, or pace. (TR 18). As noted by the Law Judge, this assessment was consistent with the findings of the state agency psychologists who reviewed the medical record in plaintiff's case. (TR 24-25). However, in formulating a hypothetical question for the vocational expert's consideration, the Law Judge did not include any limitations in terms of concentration, persistence, or pace, but instead asked the expert to consider only that Ms. White "should receive one to two-step job instructions." (TR 50). In response to the hypothetical question, the vocational expert identified several jobs which he believed that plaintiff could be expected to perform, though he noted that all of the jobs were "production work," which would not permit regular breaks, and which would require the "employee . . . to be right there at the work station." (TR 51-52). The Law Judge relied on the testimony of the vocational expert in determining that Ms. White retains sufficient functional capacity for several specific work roles existing in significant number in the national economy. (TR 28).

In Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989), the United States Court of Appeals for the Fourth Circuit commented as follows:

> The purpose of bringing in a vocational expert is to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform. In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments. (citations omitted).

In the instant case, the court is simply unable to conclude that the Law Judge properly accounted for plaintiff's moderate limitations in concentration, persistence, and pace in his questioning of the vocational expert. The vocational expert specifically observed that the work roles envisioned

for plaintiff would require the employee to be at the work station on a sustained basis and to remain on task. As a matter of common sense, it would seem that repetitive work activity would be affected by moderate limitations in concentration, persistence, and pace. This principle was recently recognized by the United States Court of Appeals for the Fourth Circuit in Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015):

> In addition, we agree with other circuits that an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.' Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011) (joining the Third, Seventh, and Eighth Circuits). As Mascio points out, the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace.

Id. at 638.

The issues in this case are somewhat close because the Administrative Law Judge did not attempt to subsume plaintiff's moderate impairment in concentration, persistence, and pace under a broad finding of inability to perform anything other than simple tasks, a circumstance which the court finds often in other social security cases and a circumstance which was present in Mascio. Based on statements given by Ms. White at the time of her application for benefits, the Law Judge observed as follows:

> With regard to concentration, persistence or pace, the claimant has moderate difficulties. The claimant asserted difficulty with handling stressors, history of suicidal ideation and attempt and memory problems that render her unable to recall previous actions. However, she also stated she generally did not follow a routine, therefore changes in routine likely would not bother her; and that she was able to watch movies in entirety, sustain attention, follow spoken and written directions, and capable of sometimes completing tasks (Exhibits 4E and 6E).

(TR 18-19). While the court believes that, to his credit, the Law Judge at least attempted to analyze the evidence in terms of plaintiff's deficiencies in concentration, persistence, and pace,

the court must ultimately conclude that the Law Judge's evaluation fell short. Simply because Ms. White may be able to maintain attention for a two hour movie, does not necessarily mean that she can perform production work on an eight hour day, five day per week basis. Moreover, the Law Judge's resolution of this critical issue did not take into account the emphasis placed by the vocational expert on the importance of persistence, pace, and staying on task in the jobs envisioned for Ms. White. Nor does the Law Judge's opinion provide sound reasons for the fact that plaintiff's residual functional capacity, as put to the vocational expert, included no real work-related emotional limitations, despite the Law Judge's finding of severe impairments based on depression, anxiety, bi-polar disorder, and post-traumatic stress disorder, which, by definition, result in significant limitations in mental ability to do basic work activities. See 20 C.F.R. § 416.921(a).

It is well settled that, in adjudicating a claim for social security benefits, the Administrative Law Judge must give reasons for the resolution of critical issues in the case. See Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013); Hines v. Bowen, 872 F.2d 56, 59 (4th Cir. 1989); Arnold v. Secretary, 567 F.2d 258, 259 (4th Cir. 1977). The court concludes that the final decision of the Commissioner does not explain the discrepancy between the impairments and limitations found by the Law Judge to exist, and the crucial hypothetical question put by the Law Judge to the vocational expert. The court concludes that plaintiff's case must be remanded for further development and consideration, consistent with this opinion. See Radford v. Colvin, supra at 296.

On appeal to this court, plaintiff argues that the final decision of the Commissioner should be reversed. Ms. White points out that at the time of the administrative hearing on July

6

Case 7:15-cv-00074-GEC   Document 18   Filed 10/15/15   Page 6 of 9   Pageid#: 873

22, 2013, she had already undergone an orthopaedic evaluation by Dr. Robert B. Stephenson, and that Dr. Stephenson's report was pending. She also proposed to submit a consultative psychological evaluation from Dr. Pamela S. Tessnear. The Administrative Law Judge agreed to receive and consider the two consultative reports once they became available. (TR 33). Ms. White eventually submitted the reports to the Administrative Law Judge, and the Law Judge referenced both reports in his opinion. The Law Judge determined to give both reports lesser weight because the opinions rendered by the consultants were said to be inconsistent with objective clinical findings and other medical evidence of record. (TR 26).

Plaintiff now maintains that the reports from Dr. Stephenson and Dr. Tessnear clearly establish that she is disabled for all forms of substantial gainful employment. Dr. Stephenson found that Ms. White could perform lighter work activity, but that she would be required to elevate her legs during the work day in order to control edema in her lower extremities. Based on her review of plaintiff's medical history, as well as her own clinical evaluation, Dr. Tessnear diagnosed recurrent, severe major depressive disorder, generalized anxiety disorder, and panic disorder with agoraphobia. She assessed Ms. White's GAF as between 45 and 48.[2] Dr. Tessnear offered the following functional assessment:

> Ms. White is able to understand and follow simple instructions. Attention and concentration are adequate for short periods but she cannot maintain focus for more than a few hours at a time. Social functioning is markedly impaired and she is not able to work with the public or get along with supervisors or co-workers. She has unpredictable rage attacks in which she can become combative. Her ability to cope with any increased stress is very poor and new stressors may lead

---

[2] The global assessment of functioning, or GAF, is used to report the clinician's judgment of the subject's overall level of functioning. A GAF score between 41 and 50 is indicative of serious symptoms or any serious impairment in social, occupational, or school functioning. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 48 (4th ed. text rev. 2000).

to decompensation. Because of panic, anxiety and fearfulness in public places, she is expected to have frequent work absences, if she is able to leave her home at all.

(TR 790).

The court believes that the Law Judge offered a reasonable assessment of the reports of Dr. Stephenson and Dr. Tessnear, and that these studies do not establish that plaintiff is disabled within the meaning of the Social Security Act. Dr. Stephenson did not observe severe edema at the time of his examination. (TR 779). Perhaps more importantly, Dr. Stephenson noted that Ms. White was not engaging in treatment regimens for her edema, other than for the use of a diuretic. (TR 777). Dr. Tessnear reported that Ms. White was not receiving treatment for her psychiatric and emotional problems at the time of the clinical evaluation. (TR 790). The court also notes that at the time of his orthopaedic examination, Dr. Stephenson specifically noted that plaintiff manifested "no evidence of significant depression or anxiety." (TR 779). Stated succinctly, the court believes that the Law Judge might reasonably interpret the reports of Dr. Stephenson and Dr. Tessnear so as to indicate that plaintiff's physical and emotional problems are subject to reasonable medical control through appropriate treatment measures, and that the evidence does not support the notion that plaintiff's edema and emotional difficulties could reasonably be expected to result in a continuous period of disability of not less than 12 months, as is required for entitlement to supplemental security income benefits. See 42 U.S.C. § 1382c(a)(3)(A). Once again, the court believes that the critical and dispositive issue in Ms. White's case turns on the assessment of her vocational adaptability.

For the reasons stated, the court concludes there is "good cause" for remand of this case to the Commissioner for further development and consideration. If the Commissioner is unable

8
Case 7:15-cv-00074-GEC    Document 18    Filed 10/15/15    Page 8 of 9    Pageid#: 875

to decide this case in plaintiff's favor on the basis of the existing record, the Commissioner will conduct a supplemental administrative hearing, at which a comprehensive hypothetical question can be put to a qualified vocational expert. Upon remand, both sides will be allowed to present additional evidence and argument. An appropriate judgment and order will be entered this day.

The Clerk is directed to send certified copies of this opinion to all counsel of record.

DATED: This 15th day of October, 2015.

_____
Chief United States District Judge